UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.           )<br>)<br>RICHARD C. REID           ) | CRIMINAL NO. 02-10013-WGY |

DEFENDANT'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO SUPPRESS FRUITS OF ILLEGAL SEARCHES AND SEIZURES

The Defendant submits this Supplemental Memorandum to address certain issues that arose during oral argument on September 25, 2002 and the Government's Response filed October 2, 2002, in the unlikely event the Court would be making a final ruling on the Defendant's Motion to Suppress.[1]

I.   The Issue

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause" and "particularly describing [the] things to be seized." See U.S. Const. Amend. IV. Thus, *every* warrant must describe the things to be seized with as much particularity as "the circumstances and the nature of the alleged crime permit." See, e.g., United States v. Vitek Supply Corp., 144 F.3d 476, 481 (7th Cir. 1998). A separate issue is whether the breadth or manner of the search to find those items was justified.[2] As the First Circuit has put it:

---

[1] Since the Defendant entered an unconditional guilty plea, the motion to suppress is moot. See, e.g., United States v. Frieberger, 28 F.3d 916, 918 n.4 (8th Cir. 1994); United States v. A&S Council Oil Co., 947 F.2d 1128, 1131 (4th Cir. 1991); United States v. Muniz, 882 F.2d 242 (7th Cir. 1989); United States v. Barrios, 994 F. Supp. 1257, 1261 (D. Colo. 1998); United States v. Stein, 322 F. Supp. 346, 347 (N.D. Ill. 1971).

[2] In contrast to the particularity required of a warrant's description of items to be *seized*, whether there is sufficient cause for the manner of a *search* is a highly fact-bound determination that courts resolve in different ways depending on the circumstances. Compare Upham, 168 F.3d. at 537 (conducting search for images of child pornography by undeleting deleted images was permissible manner of search since defendant had attempted to destroy the files) with United

1

> The warrant process is primarily concerned with identifying *what* may be searched and seized – not how – and *whether* there is sufficient cause for the invasion of privacy thus entailed.

United States v. Upham, 168 F.3d 532, 537 (1st Cir. 1999) (emphasis in original).

The Defendant's claim is that the Warrant did not tell the agents *what* to seize with any particularity and therefore authorized a *seizure* beyond the bounds of probable cause, not that a *search* was conducted in an overbroad manner. There was, in fact, no *search of* the Defendant's e-mail account, because the warrant authorized the *seizure* of the account in its entirety, including its entire contents and all related subscriber and transactional records. Thus, no *search of* the content of the account was done because the overbroad warrant made it unnecessary.[3]

II.   The Warrant Failed to Limit The Things To Be Seized to the Scope of Probable Cause.

    A.   Nature of the Offense and Other Known Circumstances

Here, the theory of probable cause as stated in the Affidavit was that the Defendant wore shoes containing a device capable of exploding on an American Airlines flight on December 22, 2001, and that he or someone else had e-mailed instructions for constructing the device from the internet to his e-mail account. See Affidavit at ¶¶ 11-12. In addition to that specific criminal activity, the government knew the time frame when such instructions reasonably could have been e-mailed to the Defendant's account,[4] and

---

States v. Carey, 172 F.3d 1268, 1274-76 (10th Cir. 1999) (probable cause to search for text files related to drug activity did not permit agent to open picture files related to child pornography).

[3] For this reason, it is incorrect that only seven e-mails are at issue. Seven e-mails may happen to be what interests the government, but what the Warrant authorized the government to seize and what it in fact seized were all 29 e-mails in the account and all subscriber and transactional information about the account.

[4] The government knew that no thought was given to any plan until the summer of 2001 at the earliest, that the Defendant thereafter "devised the plan himself, utilizing the instructions found

that the Defendant had personal communications with his mother through his e-mail account.[5]

    B.    <u>The Warrant</u>

The Warrant authorized a search of the premises identified as "MSN Hotmail account a_jay2001@hotmail.com and/or user name a_jay or those accounts held by or under the names of Richard Reid [or] Richard Colvin Reid maintained by MSN Hotmail," and the seizure of the entire content of the premises, that is, "any and all" of the e-mail communications and records listed in Attachment A, which were said to be "evidence of the commission of criminal offenses" and "property designed or intended for use or which is or has been used as the means of committing a criminal offense." <u>See</u> Warrant (Exhibit A).

No criminal offense or criminal activity was mentioned on the face of the warrant or in Attachment A. Each of the items listed in Attachment A was preceded by the word "All" or "Any and all," with no limitation as to time frame or as to the recipient or sender of any electronic mail to be found in the account.

Part I of Attachment A authorized this information to be seized from Hotmail, and Part III authorized the same information to be seized by federal agents after obtaining it from Hotmail.[6]

---

on the internet to construct the device" and learning how to work with explosives from a "right-wing" book, that "his plan was devised over the course of about a month," and that he then wore the shoes for a month or two before boarding the airplane. <u>See</u> 12/22/01 FBI 302 at 2-4; 12/23/01 FBI 302 at 1, 4-5.

[5] <u>See</u> 12/23/01 FBI 302 at 3 (Reid "primarily used his accounts to contact his mother."); Affidavit at ¶ 11 (Affiant stating that Reid's mother revealed that he used a_jay2001@hotmail.com to communicate by e-mail). The Court must presume that the government had no probable cause to believe that the Defendant's mother was one of the "persons" with whom the Defendant "exchanged information," or that there was probable cause to believe the Defendant would leave a final statement for his family (<u>see</u> Govt. Opp. At 35), since the Affidavit nowhere so states.

In sum, the Warrant authorized the agents to *seize* evidence of *any* crime that might be contained in the account, whether it was child pornography, threats to an ex-lover, fraudulent business dealings, or evidence of drug dealing, none of which was supported by the facts set forth in the Affidavit.

The warrant was thus problematic in the very ways meant to be addressed by the particularity requirement – it did not supply enough information to control the agents' judgment in selecting what to take,[7] and the category specified (all records constituting evidence of any crime) was too broad in the sense that it included items that should not have been seized. See Upham, 168 F.3d at 535.

III.  This Court, The First Circuit, and the Supreme Court Consistently Have Required That, At Minimum, The Warrant Limit The Seizure To Evidence Of Particular Criminal Activity.

Had the warrant limited the things to be seized with the phrases, "dating from June 1, 2001 to the present," and "which are evidence of a plan to construct or use an explosive device capable of being secreted in footwear and undetected by airport security procedures" (as the government puts it, see Gov, Opp. At 34), or even just "which are evidence of a plan to construct or use an explosive device," it would have fulfilled the minimum requirements for particularity in this case.

---

[6] Part III authorized law enforcement personnel to "further copy" the same information that Part I authorized to be taken from Hotmail. See Warrant, Attachment A (Exhibit A). When the government copies information, electronic or otherwise, it is a "seizure." See United States v. Longo, 70 F. Supp. 2d 225, 247 (W.D.N.Y. 1999) (government "seized" a directory listing of the hard drive and computer files which it copied to floppy disks and compact disks); United States v. Gawrysiak, 972 F. Supp. 853, 865-66 (D.N.J. 1997) (government "seized" all of defendant's computer files by copying them onto diskettes); United States v. David, 756 F. Supp. 1385, 1389, 1392-93 (D.Nev. 1991) (obtaining information from a computer memo book was a seizure).

[7] Though one could say that the direction to the agents was straightforward, i.e., take everything, the problem with that interpretation is that the affidavit did not establish probable cause to do so.

In <u>United States v. Scott</u>, 83 F.Supp.2d 187 (D. Mass. 2000), this Court upheld a warrant that authorized the seizure of generic categories of documents on the sole basis that it limited the seizure to those records that were related to particular criminal activity: "The search warrant authorized the seizure of property that constituted evidence of criminal offenses, the fruits of crime, and the instrumentalities of criminal offenses, to wit, making a counterfeit security, unlawfully producing an identification document, bank fraud, using intimidation to prevent communication of a federal offense, and conspiring to commit the foregoing offenses." <u>Id</u>. at 199.

In response to the defendant's argument in <u>Scott</u> that a time frame was required, this Court first reviewed the First Circuit's <u>Lafayette Academy</u> and <u>Abrams</u> cases which held invalid warrants that did not specify time frame *or* connect the records to be seized to the criminal activity described in the affidavits. The Court then noted that the First Circuit in <u>United States v. Bucuvalas</u>, 970 F.2d 937 (1st Cir. 1992) stated that "[t]emporal delineations are but one method of tailoring a warrant description to suit the scope of the probable cause showing." <u>Scott</u>, 83 F. Supp.2d at 199-200 (quoting <u>Bucuvalas</u>, 970 F.2d at 942 n.7). This Court concluded by stating that "even if this Court were to determine that the search warrants were insufficiently particular with respect to setting forth the time period within which certain items to be seized," it would not require suppression of all of the evidence because the warrants were sufficiently particular in describing other items. <u>Id</u>. at 199-200. Thus, the Court did not have to resolve the time frame question because the records the government apparently wanted to use were described in the warrant as property that constituted evidence of specified criminal offenses. <u>Id</u>. at 199.

Here, *no* method of tailoring the description of the things to be seized to the scope of probable cause was used. The <u>Bucuvalas</u> case cited in <u>Scott</u> thus would require

5

invalidation of the warrant in this case. In Bucuvalas, the warrant had two clauses. The first described records "which constitute evidence of and instrumentalities of violations of 18 U.S.C. §§ 1961 (c) and (d)," "18 U.S.C. § 1341," and "18 U.S.C. § 371." Bucuvalas, 970 F.2d at 941 n.5. The second clause stated:

> *and, in particular,* [records] evidencing the ownership or control of businesses in the Combat Zone in Boston, as described in ¶ 10 of the Affidavit of Special Agent Robert J. Jordan, which are licensed by the Boston Licensing Board and/or the Mayor's Office of Consumer Affairs and Licensing Division and the payment of bribes to public officials with regulatory authority over such licensed premises . . .

Id. (emphasis in original). The First Circuit stated that though the first clause "serv[ed] the broader, yet defining, purpose of identifying the criminal offenses the target evidence was expected to establish," "*but for* the search constraints in the second clause we might agree that the particularity requirement of the Fourth Amendment would not have been met." Id. at 942 (emphasis supplied). The First Circuit then stated that since the second clause "*tracked the allegations of clandestine ownership for which probable cause was established in the accompanying affidavit*," it limited the seizure to the scope of probable cause, and therefore differed from warrants like those in the Abrams and Lafayette Academy cases, which lacked a reference to the specific criminal activity described in the affidavit, a time frame, or any other limiting criteria. Id. at 942 & n.7.

Similarly, in United States v. Timpani, 665 F.2d 1 (1st Cir. 1981), the First Circuit upheld a warrant authorizing the seizure of:

> All records relating to extortionate credit transactions (loansharking), including [a list of records] which are evidence of violations of 18 U.S.C. Sections 892, 893, 894, and 371.

Id. at 4-5. The First Circuit upheld the warrant on the basis that "[e]ach item is plausibly related to the crime – loansharking and gambling – that is specifically set out," and the

6

warrant "provide[s] a standard for segregating the 'innocent' from the 'culpable' in the form of requiring a connection with a specific, identifiable crime." Id. at 5. See also United States v. Roche, 614 F.2d 6, 7-8 (1st Cir. 1980) (where there was probable cause to search for evidence of fraud relating only to motor vehicle insurance, the warrant was overbroad in authorizing the seizure of documents pertaining to all types of insurance); compare United States v. Bithoney, 631 F.2d 1, 2-3 (1st Cir. 1980) (warrant authorizing the seizure of categories of documents relating to seventeen individuals which constituted evidence, fruits or instrumentalities of conspiracy to defraud the Social Security Administration "adequately focused the search and seizure upon just those documents likely to evidence the described conspiracy.").

Finally, the Supreme Court in Andresen v. Maryland, 427 U.S. 463 (1976) held that a warrant was not a general one authorizing the seizure of "any evidence of any crime" only because it limited the seizure to "evidence relating to 'the crime of false pretenses with respect to Lot 13T.'" Id. at 480-82.

The warrant in this case did not require a connection between the things to be seized and any specific, identifiable crime, as required by all of the caselaw, or even a bare citation to a criminal statute, which the Abrams, Lafayette Academy, and Bucuvalas cases held was not enough.[8]

The sole case upon which the government relies does not control this Court's decision and defeats the government's position in any event. In United States v. Albert, 195 F. Supp.2d 267 (D. Mass. 2002), Judge Gorton stated that a description on the face of

---

[8] As this Court recognized in Scott, an affidavit may provide the necessary particularity only if "the affidavit accompanies the warrant, and the warrant uses suitable words of reference which incorporate the affidavit." Id. at 198 n.12 (quoting United States v. Klein, 565 F.2d 183, 186 n.3 (1st Cir. 1977)).

7

the warrant exactly like that here "contains a constitutionally insufficient description of the property to be seized." Id. at 273. Judge Gorton then went on to find that an attachment to the warrant was sufficiently particularized to save the warrant because, like the warrant in Upham, it listed the defendant's computers, disks, and documents and images containing "depictions of child pornography." Id. at 272. Thus, unlike the warrant or the attachment here, the attachment in Albert did in fact require that the documents and images to be seized would be evidence of a crime supported by probable cause, i.e., possession of child pornography. Judge Gorton's statement that the particularity requirement "does not require a warrant to specify the criminal offense to which the objects of the search are related" was, therefore, *dicta*. Moreover, it was *dicta* that does not apply to the Warrant in this case. Judge Gorton distinguished Lafayette by characterizing the attachment before him as one that did not "allow the seizure of almost every book or paper located at a premises." Albert, 195 F. Supp.2d at 276. In contrast, the Warrant here authorized the seizure of the entire content of the premises. Lafayette's holding that "at a minimum, the precise nature of the [offense] for evidence of which the search was authorized" must be stated in the warrant, see 610 F.2d at 3, applies in any case where, as here, the warrant lists generic categories of records, but the affidavit does not establish probable cause to believe that all such records are evidence of the criminal activity supported by the facts in the affidavit. See United States v. Roche, 614 F.2d 6, 7-8 (1st Cir. 1980). That is an argument the government does not attempt to make, nor could it, as the theory of probable cause was solely that instructions for an explosive device were sent to the Defendant's e-mail account, and the government knew that the

8

Defendant did not use the e-mail account exclusively for that purpose, but also, for example, to correspond with his mother.[9]

IV.  **The Government's Suggestion that the Use of "Codes or Ambiguous Language" Somehow Absolved It of Complying With the Particularity Requirement is Both Irrelevant as a Matter of Law and Factually Wrong.**

As stated above, the Defendant's Fourth Amendment claim is that the Warrant failed to tell the agents what to seize with any particularity and therefore authorized a *seizure* beyond the bounds of probable cause. Though a search for certain papers particularized in a warrant might entail at least a cursory review of innocent, irrelevant papers, that possibility has nothing to do with and does not somehow remove the requirement that "no Warrants shall issue" but those "particularly describing [the] things to be seized."[10] See U.S. Const. Amend. IV. The government's argument that the e-mails turned out to contain "codes or ambiguous language" is, therefore, legally irrelevant.

Furthermore, the Defendant questions the government's failure even to attempt a search for key words, a search method strongly endorsed by the DOJ and in the caselaw,

---

[9] In United States v. Falon, 959 F.2d 1143 (1st Cir. 1992), the First Circuit explained that when an individual's fraudulent business activities are centered in the home, "it would require extraordinary proof to demonstrate that [his] entire life is consumed with fraud and that *all* records found in the home were subject to seizure," and that "[w]ithout such unusual proof, the broad categories of items that may be seized pursuant to an 'all records' search of a home must be sufficiently linked to the alleged criminal activity so as to distinguish them from innocent, personal materials." Id. at 1148. Just as it is extraordinarily unlikely that all of the papers in a person's home would be evidence of a crime, so it is with mail, telephone calls, and e-mail, all of which are extraordinarily likely to contain personal, innocent materials that have nothing to do with any probable cause established in a warrant.

[10] That is why, in United States v. Upham, the First Circuit upheld the paragraph of the warrant describing the things to be seized as "images of minors engaging in sexually explicit conduct [as defined by the statute]," but would not have upheld a paragraph describing "*any* images," and upheld the paragraph permitting removal of computers for an off-site search for logistical reasons, but would not have upheld the seizure of all data within the computers based only on probable cause to seize images of child pornography. 168 F.3d at 535-36 & n.1 (emphasis in original).

9

see Deft's Reply at 16-17,[11] because it strongly indicates that the government was on a fishing expedition from the outset, and not truly interested in focusing on words that, if its theory of probable cause were correct, were likely to be found in the contents of the e-mail. Variations on unique words the Defendant used to describe the alleged construction of an explosive device -- such as "300," "grams," "Semtex," "explosive," "bomb," "C4," "detonator," "fuse," "component," "powder," "orange," "Gortex," "10 cm.," "$2,000," "3,000," "burn," "flames," "ignite," "25 cm." -- were readily available for a key word search. See 12/22/01 302 at 3; 12/23/01 FBI 302 at 3-4. The notion that a recipe for a bomb could be written in code and still be of any use is at least as implausible as the notion that one could prepare a wedding cake from quantities, weights, measures, and ingredients disguised in code. According to DOJ policy, if searching agents have reason to believe that a "narrow approach will be technically impossible," for example, because the targeted files may be "written using code words to escape detection" by means of a "key word" search, the agent should inform the magistrate of these issues in the affidavit. See Searching and Seizing Computers 2001, Part II(C)(Step 3) at 66-67 (Deft's Reply, Exhibit C). This was not done.

    The fact that, as it turned out, the e-mails did not contain any information about constructing an explosive device, and did contain what the government describes as "codes or ambiguous language" relating to other matters, see Govt. Opp. at 35, does not explain the government's failure even to attempt a keyword search or to explain in the Affidavit why not. The same is true of its failure to search for filename extensions unique to internet files – the fact that no internet files were found in the Defendant's e-

---

[11] A key word search was successfully performed by agents in the Scott case. See 83 F. Supp.2d at 197 & n.11.

mail account does not explain the government's failure even to look for what it claimed to be looking for by using a readily available identifying characteristic of internet files.

V.  The Government's Rationale for the Absence of Any Particularity in the Warrant Would Nullify the Particularity Requirement.

As set forth in the caselaw discussed in Part III, supra, the requirement that a crime be named in a warrant serves the substantive purpose of ensuring that the items to be seized are evidence of the offense for which probable cause has been established. The government offers a response that is unconvincingly technical.

The fact that Form AO 93 has no space for specifying the offense to which the items to be seized are said to be connected fails to justify why the Warrant should not include that information nonetheless. If the lack of a space on a form dictated the particularity required by the Fourth Amendment, there would be no particularity requirement at all.

The same is true of the government's Rule 41 argument. Rule 41 does not pretend to define the particularity required by the Fourth Amendment. Paragraph (b) of Rule 41 states that a warrant may issue for four necessarily general categories of things and persons.[12] Paragraph (c)(1) then states that if the magistrate is satisfied that there is probable cause for the issuance of a warrant, he or she shall issue a "warrant *identifying* the person or property to be seized." See Fed. R. Crim. P. 41(c)(1) (emphasis supplied). The word "identifying" obviously refers to the constitutional particularity requirement, which is, of course, not set forth in the rule but in the caselaw interpreting the Fourth Amendment.

---

[12] These are (1) property that constitutes evidence of a criminal offense, (2) contraband, fruits of crime, or other things criminally possessed, (3) property designed or intended for use or which is or has been used as the means of committing a criminal offense, or (4) a person for whose arrest there is probable cause. See Fed. R. Crim. P. 41(b).

11

The government's argument that specification of the offense is not required to fulfill the purpose of a warrant (Govt. Resp. at 4) is contrary to that caselaw. The purpose of a warrant is to ensure "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizure." See U.S. Const. Amend. IV. Two of the purposes of the further requirement that "no Warrants shall issue" but those "particularly describing [the] things to be seized," are (1) to "suppl[y] enough information to guide and control the agent's judgment in selecting what to take," and (2) to ensure that "the category as specified is [not] too broad in the sense that it includes items that should not be seized," that is, items for which there is no probable cause. Upham, 168 F.3d at 535.

Here, as noted above, the warrant permitted the officers to take everything, including personal, innocent information, and evidence of any conceivable crime, for which there was no probable cause. Where probable cause does not exist for all documents in a class, the warrant must place a limit on which ones can be seized, and must indicate how the relevant documents relate to the criminal activity at issue.[13] See United States v. Kow, 58 F.3d 423, 427 (9th Cir. 1995); see also In re Application of Lafayette Academy, Inc., 610 F.2d 1, 3 (1st Cir. 1979) ("the [overbroad] warrant purports to authorize not just a search and seizure of [offense]-related records . . . but a general rummaging for evidence").

---

[13] The third purpose of the particularity requirement, as the government correctly notes, is "to inform the person subject to the search and seizure what the officers are entitled to take." Id. at 5. The "persons subject to the search" were both Hotmail and the Defendant. See Warrant, Attachment A, Parts I and III (Exhibit A). Even if executing officers exercise more restraint than the warrant permits, that "does not erase the fact that under the broadly worded warrant [the persons subject to the search] were subject to a greater exercise of power than that . . . for which probable cause had been established." See Lafayette Academy, 610 F.2d at 5.

The government's argument that naming an offense in a warrant might compromise an ongoing investigation is hard to understand, since, as it points out, the warrant and the application may be sealed upon motion of the government, which was done in this case. See Affidavit, Part H.

Finally, the government suggests in a footnote without citation to any law that "it could be argued" that "the error was harmless" where the property was "under the control of an institutional custodian." See Govt. Resp. at 5-6 n.3. If this means that the Defendant has no standing to challenge the seizure, he plainly does. See United States v. Maxwell, 45 M.J. 406, 417-19 (C.A.A.F. 1996) (e-mail account subscriber has standing to challenge a seizure of his account). The government has conceded as much by obtaining a warrant in the first place and failing to contest the Defendant's standing throughout these proceedings.

RICHARD C. REID
By his attorneys,

*Amy Baron-Evans*
Amy Baron-Evans (BBO #560312)
Elizabeth L. Prevett (BBO# 564894)
Federal Defender Office
408 Atlantic Avenue, 3d Floor
Boston, MA 02210
(617) 223-8061

### Certificate of Service

I, Amy Baron-Evans, hereby certify that a true copy of the above document was served upon Assistant U.S. Attorneys Timothy Q. Feeley and Gary S. Katzmann by hand on October 4, 2002.

*Amy Baron-Evans*
Amy Baron-Evans