UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA   )
                             )
      V.                )          Criminal No. 02-10013-WGY
                             )
RICHARD C. REID        )

Government's Motion to Vacate or Modify
Appointment of Counsel for Defendant

By orders dated June 12, 2003 and April 12, 2006 (collectively, the "Orders"), the Court

(Dein, M.J.) appointed the Federal Defender Office as counsel for Richard C. Reid ("Reid") for

certain purposes following his conviction on the charges in this case.  For the reasons set forth

below, the United States, by its undersigned counsel, hereby moves M.J. Dein to vacate so much

of the Orders as provides Reid counsel with regard to "any government contacts with Reid

relating to the background of his involvement in the crimes of conviction."  In the alternative, the

United States asks that the Court modify the Orders to make clear that future interviews of Reid

within the Bureau of Prisons by government representatives are beyond the scope of the

representation effected by the Orders.

Reid was convicted years ago and is now incarcerated for life in Colorado.  Because of

the nature of the crimes of which he was convicted, numerous government representatives

consider him to be an important potential source of information concerning the terrorist activities

of others and strongly desire to interview him.  However, the scope of the representation effected

by the Orders is unclear and the government does not wish inadvertently to be charged with

contacting Reid in violation of attorney anti-contact ethical rules.[1]  Thus, government

---

[1]  See, e.g., Massachusetts Rule of Professional Conduct 4.2 (Communication with
person represented by counsel) ("In representing a client, a lawyer shall not communicate about

representatives – even non-attorneys who are not working with government attorneys – have, to

counsel's knowledge, heretofore refrained from attempts to interview Reid directly,

notwithstanding the obvious importance of their inquiry.  Because of these significant practical

concerns and because the cited provision of the Order, as a legal matter, exceeds the scope of

representation to which Reid is entitled under the Criminal Justice Act, the government seeks the

relief articulated above.

I.      Factual and Procedural Background

Reid was initially charged criminally in this district on December 23, 2001.  Reid, who

had unsuccessfully attempted to destroy American Airlines Flight 63 over the Atlantic Ocean by

detonating explosives hidden in his shoes, ultimately pleaded guilty on October 4, 2002 to eight

terrorism-related offenses.  On January 30, 2003, he was sentenced to serve the remainder of his

life in prison.  Reid filed a notice of appeal from the sentencing on February 5, 2003.  On

February 28, 2005, the Court of Appeals granted Reid's unopposed motion to voluntarily dismiss

his appeal.  No further appeal of his conviction or sentence followed and the time for filing any

such appeals has expired.

On February 4, 2003, shortly after his sentencing, the Bureau of Prisons placed Reid in

---

the subject of the representation with a person the lawyer knows to be represented by another
lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by
law to do so.") While the prohibition contained in this Rule applies only to contacts by attorneys,
non-attorney government personnel are sometimes asserted to be agents of attorneys for
purposes of this Rule.  In the particular circumstances here, although the continuing Special
Administrative Measures ("SAMs") applicable to Reid's confinement within the Bureau of
Prisons do not prescribe a role for attorneys of the U.S. Attorney's Office for the District of
Massachusetts in determining who is permitted to visit Reid, the fact that the SAMs prescribe
other limited roles for this Office could be used to argue that contacts by non-attorney
government representatives, even unknown to this Office, should be imputed to this Office for
purposes of asserting violations of Rule 4.2.

the maximum security facility at Florence, Colorado, where he has since remained.

While his criminal case was pending in the District Court, Reid challenged the Special

Administrative Measures ("SAMs") restricting his access to news media while incarcerated.  In

2003, Reid sought review of the District Court's order concerning the SAMs.  The Court of

Appeals declared the appeal moot on May 27, 2004 and dismissed it.  United States v. Reid, 369

F.3d 619 (1st Cir. 2004).  The Court noted that any further challenge to the SAMs would have to

be brought in Colorado, where Reid is now housed.[2]

II.     Issuance of the Orders

On June 12, 2003, three months after Reid's sentencing and after his transfer to Colorado,

this Court, apparently in response to an ex parte application filed by Reid, entered the following

order extending its original appointment[3] of the Federal Defender Office as counsel for Reid:

> The Federal Defender Office (including, specifically, Owen S. Walker,
> Federal Public Defender, and Elizabeth L. Prevett, Research/Writing
> Attorney) is appointed to represent Richard C. Reid relating to continuing
> matters arising from his original case (Criminal No. 02-10013-WGY),
> specifically, relating to (1) any government contacts with Reid relating to
> the background of his involvement in the crimes of conviction and (2) in
> the Defender Office's discretion, such further issues as deemed necessary
> and appropriate relating to so-called "Special Administrative Measures"
> (imposed upon him under 28 C.F.R. § 501.3) and related confinement
> matters, particularly as relevant to Reid's First Amendment rights.

On April 12, 2006, this Court, again apparently in response to an ex parte application, entered a

---

[2]  "If Reid still wishes to challenge the government's continued withholding of the *Time*
letters, he may do so by whatever procedures are available to him in Colorado, including any
required administrative review."  369 F.3d at 627.

[3]  On May 29, 2002, this Court had entered the following order: "It is hereby ORDERED
that the Federal Defender Office of the District of Massachusetts be appointed effective as of
12/24/01 to represent said defendant in this cause until further order of the Court."

further order entitled "Extension of Appointment of Counsel" as follows:

> It is hereby ordered that the Appointment of Counsel dated June 12, 2003, and attached hereto, extends to representation of Mr. Reid in connection with process used to secure his presence and/or testimony in the case of United States v. Zacarias Moussaoui, Criminal No. 01-455, Eastern District of Virginia.
>
> The June 12, 2003 Order appointed the Federal Defender Office to represent Mr. Reid in connection with "continuing matters arising from his original Case (Criminal No. 02-10013-WGY), specifically relating to (inter alia) any government contacts with Reid relating to the background of his involvement in the crimes of conviction[.]"
>
> It is this Court's view that the 2003 appointment encompasses any effort to secure testimony from Mr. Reid, whether initiated by the government or any other party, that may relate to the background of his involvement in the crimes of his conviction.
>
> In light of the retirement last year of Owen S. Walker, the appointment of The Federal Defender Office specifically includes Miriam Conrad, Federal Public Defender, and Judith H. Mizner, Chief of the Appellate Unit, as well as Elizabeth L. Prevett, Research/Writing Attorney.

III.   The Open-Ended Appointment of Counsel Concerning "Any Government Contacts With Reid Relating to the Background of his Involvement in the Crimes of Conviction" is Not Authorized by the Criminal Justice Act and this Court's CJA Plan.

The net effect of the 2003 and 2006 Orders is to appoint counsel for Reid with respect to three areas: (1) the issuance of process to secure his attendance at the 2006 Moussaoui trial; (2) issues arising with respect to the SAMs "and related confinement matters, particularly as relevant to Reid's First Amendment rights"; and (3) "any government contacts with Reid relating to the background of his involvement in the crimes of conviction." Since the Moussaoui trial is over, category (1) is now moot. With respect to category (2), based upon a conversation between AUSA Gregory Moffatt of this Office and AUSA David Gaouette of the U.S. Attorney's Office in Colorado, undersigned counsel understands that Reid has not raised any

4

challenges to the provisions of the SAMs following his initial challenge in Massachusetts.[4]

With respect to category (3), however, the effect of the Court's Orders is essentially to provide Mr. Reid with counsel for life with respect to "any government contacts...relating to the background of his involvement in the crimes of conviction," a subject as to which he has no constitutional right since his Fifth Amendment right has been extinguished as a matter of law by his conviction.[5]  Such an appointment is beyond the scope of the Criminal Justice Act and this Court's implementing plan.

The Criminal Justice Act of 1964, as amended (Section 3006A of Title 18, United States Code) (the "Act") provides for the appointment of counsel in certain narrowly defined situations, and mandates that each district court adopt a plan providing therefor.  In pertinent part, Section 3006A(a)(1) mandates that "[r]epresentation [] be provided for any financially eligible person who (A) is charged with a felony...., [or] (H) is entitled to appointment of counsel under the sixth amendment to the Constitution."[6]  The local implementing plan, effective July 1, 1993 (the

---

[4]  As noted above, subsequent challenges would have to be raised in Colorado.  See footnote 2, supra.

[5]  Mitchell v. United States, 526 U.S. 314, 326 (1999)("It is true, as a general rule, that where there can be no further incrimination, there is no basis for the assertion of the privilege. We conclude the principle applies to cases in which the sentence has been fixed and the judgment of conviction has become final....If no adverse consequences can be visited upon the convicted person by reason of further testimony, then there is no further incrimination to be feared."), citing Reina v. United States, 364 U.S. 507, 513 (1960)(noting "weighty authority" for the proposition that, "once a person is convicted of a crime, he no longer has the privilege against self-incrimination as he can no longer be incriminated by his testimony about said crime...."). Accord, McCall v. Pataki, 232 F.3d 321, 323 (2d Cir. 2000)("Because [plaintiff prisoner] had already been convicted and sentenced with respect to the crime of which he was asked to speak, he had no right to refuse to answer on the ground of self-incrimination."); In re The Cassandra Group, 338 B.R. 600, 604 (Bkcy. Ct., S.D.N.Y. 2006).

[6]  In its entirety, Section 3006A(a)(1) provides as follows:

"Plan"), is to the same effect.[7]  The permissible duration of such appointments is governed by

subsection (c) of § 3006A ("Duration and substitution of appointments"), as follows:

> A person for whom counsel is appointed shall be represented at every

_____

> Representation shall be provided for any financially eligible person who --
> > (A) is charged with a felony or a Class A misdemeanor;
> > (B) is a juvenile alleged to have committed an act of juvenile delinquency as defined in section 5031 of this title;
> > (C) is charged with a violation of probation;
> > (D) is under arrest, when such representation is required by law;
> > (E) is charged with a violation of supervised release or faces modification, reduction, or enlargement of a condition, or extension or revocation of a term of supervised release;
> > (F) is subject to a mental condition hearing under chapter 313 of this title;
> > (G) is in custody as a material witness;
> > (H) is entitled to appointment of counsel under the sixth amendment to the Constitution;
> > (I) faces loss of liberty in a case, and Federal law requires the appointment of counsel; or
> > (J) is entitled to the appointment of counsel under section 4109 of this title.

[7]  The prefatory paragraph to the Plan states that the judges of the District Court have adopted the Plan

> for the adequate representation of any person otherwise financially unable to obtain adequate representation, and:
> > (1) who is charged with a felony, misdemeanor (other than a petty offense as defined in 18 U.S.C. § 1, unless the defendant faces the likelihood of loss of liberty), juvenile delinquency (see 18 U.S.C. § 5034), a violation of probation or parole; or
> > (2) who is under arrest, when such representation is required by law; or
> > (3) who is in custody as a material witness, or seeking collateral relief, as provided in 18 U.S.C. § 3006A(g); or
> > (4) for whom the Sixth Amendment to the Constitution requires the appointment of counsel or for whom, in a case in which he or she faces loss of liberty, any federal law requires the appointment of counsel; or
> > (5) who is facing a parole termination hearing pursuant to 18 U.S.C. § 4211(c).

> stage of the proceedings from his initial appearance before the United
> States magistrate judge or the court through appeal, including ancillary
> matters appropriate to the proceedings.

Again, the local implementing Plan is to the same effect.[8]

Each statutory ground of eligibility for representation under the Act is tied to the

pendency of some form of specific judicial proceeding,[9] a point made clear by the repeated use

of the term "proceedings".  Entitlement to counsel under the Sixth Amendment, referenced in

subsection § 3006A(a)(1)(H), arises only upon the initiation of criminal judicial proceedings

against the defendant,  Brewer v. Williams, 430 U.S. 387, 398 (1977); United States v. Leon-

Delfis, 203 F.3d 103, 110 (1st Cir. 2000), and extends only through the defendant's first appeal of

right.  Coleman v. Thompson, 501 U.S. 722, 755-57 (1991).

Consistent with the scope of the Sixth Amendment right, the Second Circuit has found

that "ancillary matters appropriate to the proceedings" do not encompass post-appeal motions for

reduction of sentence in light of amendments to the Guidelines.  United States v. Reddick, 53

F.3d 462, 465 (2d Cir. 1995)(noting its earlier ruling in Miranda v. United States, 455 F.2d 402,

404-05 (2d Cir. 1972), that the term "ancillary matters" refers only to those involved "in

defending the principal criminal charge" and not to post-conviction proceedings).  Accord,

---

[8]  Section V(D) of the Plan ("Scope of Representation") provides that "[a] person for whom counsel is appointed shall be represented at every stage of the proceedings from his or her initial appearance before the judicial officer through appeal, including ancillary matters appropriate to the proceedings."

[9]  That is, (A) criminal charge, (B) juvenile delinquency proceeding, (C) probation violation, (D) criminal arrest, (E) supervised release violation or change in conditions or terms thereof, (F) civil commitment, (G) material witness proceeding, (H) entitlement to counsel under the sixth amendment, (I) person facing "loss of liberty in a case", and (J) proceeding to effect foreign transfer of offender.  (Emphasis added).

United States v. Whitebird, 55 F.3d 1007, 1011-11 (5th Cir. 1995).  See also United States v.

Tajeddini, 945 F.2d 458, 470 (1st Cir. 1991)("This circuit and others...have held that a federally

convicted defendant is not entitled under [the Act] or the Sixth Amendment, to appointment of

counsel on a motion for new trial."), cert. denied, 505 U.S. 1211 (1992), abrogated on other

grounds, 528 U.S. 470 (2000).

      To the extent that the Court may be deemed to have any discretion under the Act to

continue appointment of counsel post-appeal, beyond the scope of the Sixth Amendment right,

see Reddick, 53 F.3d at 465; Dirring v. United States, 353 F.2d 519, 520 (1st Cir. 1965), but see

United States v. McKee, 309 F. Supp.2d 1358, 1359-60 (M.D. Ala. 2004)(questioning whether

such discretion exists, given the Act's distinction between mandatory appointment under §

3006A(a)(1) and discretionary appointment under § 3006A(a)(2)), such representation must still

be consistent with the provisions of the Act.  The open-ended appointment of counsel for Reid is

not.  The Act's reference to "ancillary matters appropriate to the proceedings" must necessarily

be understood to refer to particular judicial events or process or proceedings that relate to the

underlying event justifying appointment, and not simply to the facts underlying the criminal

charge generally.  Indeed, the official guidance provided to the federal courts concerning the Act

makes that clear.  The Guide to Judiciary Policies and Procedures, Vol. VII, Chapter Two,

Section 2.01(F)(5), provides as follows:

> Representation may be furnished for financially eligible persons in
> "ancillary matters appropriate to the proceedings" pursuant to subsection
> (C) of the Act.
>
> In determining whether a matter is ancillary to the proceedings, the
> Court should consider whether the matter, or the issues of law or fact
> in the matter, arose from, or are the same as or closely related to, the facts
> and circumstances surrounding the principal criminal charge.

(Emphasis added).  The reference to "issues of law or fact in the matter" necessarily indicates

that the "matter" in question is itself some form of legal proceeding or process and, in any event,

is in distinction to "the facts and circumstances surrounding the principal criminal charge."[10]

To undersigned counsel's knowledge, there is only one reported case holding that

representation under the Act extends to the right to counsel under the Fifth Amendment, as

distinguished from the right to counsel under the Sixth Amendment specifically referenced in

Section 3006A(a)(1)(H).  Jett v. Castaneda, 578 F.2d 842 (9th Cir. 1978).  That case is both

readily distinguishable from the factual situation at bar and, the government respectfully

---

[10]  The remainder of  Section 2.01(F)(5) of the Guide further buttresses the conclusion that permanent subject matter representation is inappropriate under the Act. That Section continues as follows:

> In determining whether representation in an ancillary matter is appropriate to the proceedings, the court should consider whether such representation is reasonably necessary to accomplish, inter alia, one of the following objectives:
>
> (i)  to protect a Constitutional right;
> (ii)  to contribute in some significant way to the defense of the principal criminal charge;
> (iii)  to aid in preparation for the trial or disposition of the principal criminal charge;
> (iv)  to enforce the terms of a plea agreement in the principal criminal charge;
> (v)  to preserve the claim of the CJA client to an interest in real or personal property subject to a civil forfeiture proceeding....; or
> (vi)  to effectuate the return of real or personal property belonging to the CJA client which may be subject to a motion for return of property....

None of those objectives properly apply to the third prong of the Reid appointment, particularly since, as indicated above, Reid's Fifth Amendment rights concerning the events of conviction were extinguished as a matter of law by his conviction.

suggests, wrongly decided.[11]  The only other reported case to have considered the propriety of

appointing counsel for a <u>witness</u> (in a suppression hearing) found it only "arguable" that the Act

provided for representation, holding instead (in a decision that has only once been cited) that the

Court had "inherent authority" to make such appointments. <u>United States v. Bowe</u>, 698 F.2d

560, 566 (2d Cir. 1983).[12]  Given continuing concern at the costs of affording representation

under the Act, it is inconceivable that Congress could have intended the Act to provide counsel

---

[11]  Unlike Reid, who is simply a convicted prisoner, Castaneda, an FCI inmate, was at the time the prime suspect in a fatal stabbing that had occurred in the prison yard.  An issue on appeal was whether the district court had the authority to appoint counsel for Castaneda before charges relating to the stabbing had been filed.  The Court of Appeals held that, notwithstanding the Act's specific reference to "entitle[ment] to appointment of counsel under the sixth amendment", the Act authorized appointment in effectuation of the right to counsel during custodial interrogation under the <u>Fifth</u> Amentment as well.  578 F.2d at 844.  In so holding, the Court erred in construing the statute when it looked to legislative history even though the statutory language was clear. <u>Toibb v. Radloff</u>, 501 U.S. 157, 162 (1991) ("Where, as here, the resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear."), quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 896 (1984); <u>Garcia v. United States</u>, 469 U.S. 70, 76 n.3 (1984) ("'Resort to legislative history is only justified where the face of the Act is inescapably ambiguous'"), quoting <u>Schwegmann Bros. v. Calvert Distillers Corp.</u>, 341 U.S. 384, 395-396 (1951) (Jackson, J., concurring); <u>United States v. Turkette</u>, 452 U.S. 576, 580 (1981) ("In determining the scope of a statute, we look first to its language.  If the statutory language is unambiguous, in the absence of 'a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.'"), quoting <u>Consumer Product Safety Comm'n v. GTE Sylvania, Inc.</u>, 447 U.S. 102, 108 (1980); <u>State of R.I. v. Narragansett Indian Tribe</u>, 19 F.3d 685, 697 (1st Cir. 1994) ("In the first place, courts must look primarily to statutory language, not to legislative history, in determining the meaning and scope of a statute.").  Moreover, the Court compounded that error by misconstruing the provision of the House Report (H.Rep. No. 91-1546) on which it relied.  Both of the statutory subsections discussed in the Report (thereafter codified as subsections (H) and (I)) plainly tie eligibility for counsel to the pendency of a case in which the individual faces jeopardy, notwithstanding the somewhat broad language of the report.

[12]  The <u>Bowe</u> court's conclusion that courts have inherent authority, apart from the Act, to make such appointments was not based on any direct federal authority.  In the 23 years since the decision was published, only one court has ever cited it for even a related proposition.  <u>See</u> <u>Bothwell v. Republic Tobacco Co.</u>, 912 F.Supp. 1221, 1235 (D. Neb. 1995).

10

to every prisoner facing questioning with an arguable Fifth Amendment privilege.  See, Reddick,

53 F.3d at 465 (given the potentially "enormous[] cost" and attorney burden of finding that a

defendant's right to counsel under the Act continued post-appeal, "[w]e should be reluctant to

infer such an intention in interpreting this statute.").[13]

While there have been a few reported cases dealing with the question of whether certain

specific judicial proceedings or events might properly be considered "ancillary" to criminal

proceedings so as to warrant representation under the Act,[14] undersigned counsel is not aware of

a single reported case in which counsel has been appointed under the Act, without limit of time,

to represent a convicted defendant concerning the subject matter of an offense of which he has

already been convicted.

It is difficult to see what there is in Reid's situation or the circumstances of his offense

that renders him so uniquely deserving of counsel's services, unlike the numberless other

---

[13]  Reid can find in this Court's Plan no basis for continuing representation other than his
status as a criminal defendant.  Section V(E) of the Plan ("Representation For Individuals Other
Than Defendants") defines the universe of persons, other than criminal defendants, who are
entitled to representation under the Act.  In pertinent part, that Section provides as follows:

> Any person in custody as a material witness; seeking relief under §§ 2241,
> 2254, or 2255 of title 28, or § 4245 of Title 18, United States Code, or
> facing a parole termination hearing pursuant to 18 U.S.C. § 4211(c) may
> be furnished representation pursuant to this Plan whenever the judicial
> officer determines that the interests of justice so require and such person
> is financially unable to afford adequate representation.

Reid, who is simply a convicted criminal defendant like thousands of others, does not fit into any
of these categories.

[14]  See, e.g., Reddick, Whitebird, and Tajeddini, above; United States v. Martinson, 809
F.2d 1364, 1370 (9th Cir. 1987) (motion for return of property following dismissal of
indictment); United States Commodity Futures Trading Commission v. Orion International, Inc.,
2004 WL 1305887 (D. Or. 2004)(civil case).

convicted prisoners.

IV.     Conclusion

        Reid's eligibility for appointed counsel under the Criminal Justice Act and the local Plan

has expired.  The criminal case against him is obviously over and the time for all appeals has

expired.  Assuming, arguendo, that Reid's 2003 appellate challenge to the SAMs constituted an

"ancillary matter" within the appropriate scope of § 3006A(c), that litigation was resolved by the

First Circuit over two years ago, Reid, 369 F.3d 619, and no subsequent challenge has been filed.

With the end of the Moussaoui trial,  Reid is no longer a party to either a "case" or a

"proceeding" which could arguably entitle him to continued representation under the Criminal

Justice Act.

        For all the foregoing reasons, the government respectfully requests that the Court either

vacate the Orders or modify the Orders to make clear that future interviews of Reid within the

Bureau of Prisons by government representatives are beyond the scope of the representation

effected by the Orders.

                                          Respectfully submitted,

                                          MICHAEL J. SULLIVAN
                                          United States Attorney

                                    By:
                                          /s/ James B. Farmer
                                          JAMES B. FARMER
                                          Assistant U.S. Attorney
                                          Chief, Antiterrorism and
                                          National Security Section

Dated: September 11, 2006


                              CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.  In addition, a paper copy will be served by hand on Miriam Conrad, Esq.


/s/ James B. Farmer
JAMES B. FARMER
Assistant U.S. Attorney


Dated: September 11, 2006